## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ADAM CORPORATION/GROUP,
    1111 Briarcrest Drive, Suite 300
    Bryan, Texas 77802,

                    Petitioner/Plaintiff,

    – AND –

CITIBANK, N.A.,
    399 Park Avenue
    New York, New York 10022,

              Nominal Petitioner/Nominal Plaintiff,

    – AGAINST –

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,
    550 17th Street, N.W.
    Washington, D.C. 20429,

                Respondent/Defendant.

1:08-cv-00753 (RMU)

## RENEWED MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO RETURN THIS CASE TO THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

Petitioner/Plaintiff The Adam Corporation/Group ("TACG") moves for an Order compelling arbitration pursuant to Article VI of the July 31, 1996 Termination Agreement between First American Bank Texas, SSB, The Adam Corporation/Group and The Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund. Alternatively, TACG moves for an Order returning this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The reasons in support of TACG's motion are

set forth in the attached Memorandum in Support of Renewed Motion to Compel Arbitration, or,

in the Alternative, to Return this Case to the District Court for the Northern District of Texas,

and the exhibits attached thereto.

Dated: May 6, 2008

Respectfully submitted,

**ARNOLD & PORTER, LLP**

By: _____

Kent A. Yalowitz
   (*pro hac vice* admission pending)
Erik Walsh
   (*pro hac vice* admission pending)
399 Park Avenue
New York, NY  10022
(212) 715-1000
Email:  Kent.Yalowitz@aporter.com

Michael A. Johnson
D.C. Bar # 460879
555 12th Street, N.W.
Washington, D.C. 20007
(202) 942-5000
Email:  Michael.Johnson@aporter.com

*Attorneys for Petitioner/Plaintiff, The Adam
Corporation/Group*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ADAM CORPORATION/GROUP,
    1111 Briarcrest Drive, Suite 300
    Bryan, Texas 77802,

                    Petitioner/Plaintiff,

&mdash; AND &mdash;

CITIBANK, N.A.,
    399 Park Avenue
    New York, New York 10022,

          Nominal Petitioner/Nominal Plaintiff,

&mdash; AGAINST &mdash;

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,
    550 17th Street, N.W.
    Washington, D.C. 20429,

              Respondent/Defendant.

1:08-cv-00753 (RMU)

MEMORANDUM IN SUPPORT OF
RENEWED MOTION TO COMPEL ARBITRATION,
OR, IN THE ALTERNATIVE, TO RETURN THIS CASE
TO THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

May 6, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. .................................................................................... iii

I.    The Court Should Compel Arbitration ........................................................... 1

    A.    Factual Background ...........................................................................2

        1.    The Assistance Agreement and The Termination Agreement....................2

        2.    The Dispute........................................................................4

    B.    The Dispute Is Arbitrable..................................................................5

        1.    The Plain Language of the Contract Covers This Dispute ...........................5

        2.    The FDIC's Parol Evidence Supports Arbitration........................................8

II.    In the Alternative, the Court Should Transfer This Case to the Northern District of Texas
Pursuant to 28 U.S.C. § 1404(a) ...................................................................... 10

    A.    The Court Should Transfer if It Concludes That It Cannot Compel Arbitration
in Dallas, Texas by Operation of 9 U.S.C. § 4...................................................10

    B.    Even in the Absence of Arbitration, the Case Should Be Tried in Texas..............12

        1.    This Action "Might Have Been Brought" in the Northern District of
Texas.............................................................................................13

        2.    The Private Interest Factors Weigh in Favor of Transferring to the
Northern District of Texas ..............................................................13

            a.    The Petitioners' Choice of Forum................................................ 14

            b.    The FDIC's Choice of Forum ..................................................... 14

            c.    This Dispute Is Focused on Texas, Not the District of Columbia  15

            d.    The Convenience of the Parties ................................................... 16

            e.    Convenience of the Witnesses ..................................................... 17

            f.    Access to Sources of Proof.......................................................... 18

        3.    The Public Interest Factors Weigh in Favor of Transferring to
Northern District of Texas ..........................................................19

a.    Familiarity with Governing Law ................................................... 19

b.    Court Congestion ........................................................................ 19

c.    Texas's Interest in This Dispute ................................................. 20

CONCLUSION.............................................................................................................. 21

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044 (10th Cir. 2006)....................11

*\*Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174 (D.D.C. 2007)......................13, 14, 19

*Bosworth v. Ehrenreich*, 823 F. Supp. 1175 (D.N.J. 1993).........................11, 12

*Charlton v. Evanston Ins. Co.*, 502 F. Supp. 2d 553 (W.D. Tex. 2007)..........................8

*Chung v. Chrysler Corp.*, 903 F. Supp. 160 (D.D.C. 1995) ...........................17

*City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir. 1974)........................11

*Claasen v. Brown*, No. Civ. A. 94-1018 (GK), 1996 WL 79490 (D.D.C. Feb. 16, 1996) ...........17

*\*Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620 (D.C. Cir. 1975) ...........................14

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000)....................11

*\*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)........................5

*\*Dowley v. Dewey Ballantine, LLP*, Civ. Action No. 05-622, 2006 WL 1102768 (D.D.C. Apr. 26, 2006)..........................................5, 6, 7

*Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975) ...........................11

*\*Federal Deposit Insurance Corporation v. Bank of New York*, 479 F. Supp. 2d 1 (D.D.C. 2007) ...........................14

*Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002) ...........................9

*Flynn v. Southern Seamless Floors, Inc.*, 460 F. Supp. 2d 46 (D.D.C. 2006)..........................6, 10

*Gajeske v. Wal Mart Stores, Inc.*, No. 99-CV-777, 2000 WL 34401691 (E.D. Tex. June 26, 2000) ...........................19

*\*Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003)..........................14

*In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752 (5th Cir. 1993) ...........................9

*Howell v. Dist. of Columbia*, 522 F. Supp. 2d 57 (D.D.C. 2007) ...........................10

*Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007 (6th Cir. 2003) ......................11

*Investors Funding Corp. of N.Y. v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974)..................................13

*In Re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171 (D.C. Cir. 1987) ...................11

*LG Elec., Inc. v. First Int'l. Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001)..........................19

*Law Bulletin Publ'g Co. v. LRP Publ'n, Inc.*, 992 F. Supp. 1014 (N.D. Ill. 1998) ........................19

*Lewis v. National Football League*, 813 F. Supp. 1 (D.D.C. 1992) ...............................................15

*Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83 (D.D.C. Feb. 28, 2008)....................................17

*Mastrobouno v. Shearson Lehman Hudson, Inc.*, 514 U.S. 52 (1965) .............................................9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995) ...................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .......................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...............................4, 9

*Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir. 1987)......................................11

*Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt, Inc.*, 205 F.R.D. 1 (D.D.C. 2000) .........................5

*Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143 (D.D.C. 2002) ................................................6

*Pacific Gas and Elec. Co. v. Federal Energy Regulatory Comm'n*, 326 F.3d 243 (D.C. Cir. 2003)..............................................................................................................................8

*Peerless Imp., Inc. v. Wine, Liquor Distillery Workers Union, Local One*, 903 F.2d 924 (2d Cir. 1990)................................................................................................................6

*Pennzoil Exploration and Prod. Co. v. Ramco Energy, Inc.*, 139 F.3d 1061 (5th Cir. 1998) ................................................................................................................................6, 7

*Pervel Indus., Inc. v. TM Wallcovering, Inc.*, 871 F.2d 7 (2d Cir. 1989) .......................................6

*Phoenix Network Tech. (Europe) Ltd. v. Neon Sys. Inc.*, 177 S.W.3d 605 (Tex. App. - Houston 2005)............................................................................................................9

*Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899 (N.D. Ill. 2001)....................................................19

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356 (S.D.N.Y. 2003)...........11

*Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66 (D.D.C. 1998)...........................14

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987) .......................................................9

*Shutte v. Armco Steel Corp.*, 431 F.2d 24 (3d Cir. 1970) ................................................................13

*Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)........................................................................19

*Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F. Supp. 2d
    64 (D.D.C. 2006) .......................................................................................................................5, 9

*Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914 (5th Cir. 1997).................................................12

*Tellis Software, Inc. v. PokerTek, Inc.*, No. G-07-00072, 2007 WL 2314316 (S.D. Tex.
    Aug. 10, 2007) .............................................................................................................................19

*Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781 (9th Cir. 2001).....................................11

*\*Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13
    (D.D.C. 1996) ...............................................................................................................13, 14, 19

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ..................7

*Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951)...........................9

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989).............9

*\*Wolff v. Westwood Mgmt., LLC*, 503 F. Supp. 2d 274 (D.D.C. 2007).................................6, 7, 10

## **STATUTES**

*\*9 U.S.C. § 4*..................................................................................................................5, 10, 11

12 U.S.C. § 1819(b)(2)(A) .....................................................................................................13

12 U.S.C. § 1821(a) ..................................................................................................................2

28 U.S.C. § 1331.....................................................................................................................13

*\*28 U.S.C. § 1404(a)* ...............................................................................1, 10, 12, 13, 16

28 U.S.C. § 1406(a) ................................................................................................................12

Internal Revenue Code § 1502................................................................................................3

Petitioner The Adam Corporation/Group ("TACG") respectfully renews its motion to compel arbitration, first made the day it commenced this action in the United States District Court for the Northern District of Texas. Respondent, the FDIC, opposed arbitration and moved to transfer this case to this Court. The Texas court declined to rule on the motion to compel arbitration. Transfer Order at 2 n.* (Ex. A hereto). The Texas court also expressed no opinion on whether the case should be tried here or in Texas in the absence of arbitration. *Id.*; Magistrate's Recommendation at 8 n.3 (Ex. B hereto). Rather, it followed the Fifth Circuit's "first-to-file" rule and transferred the case to this Court to decide those matters, based on the same-day filing of a parallel case by the FDIC in this Court, *FDIC v. The Adam/Corporation Group*, No. 1:07-cv-02163-RMU.

This Court should now compel arbitration in accordance with the parties' arbitration contract. In the alternative, the Court should return the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## I.    The Court Should Compel Arbitration

This case is governed by the following arbitration clause:

> In the event that any dispute arises between or among any of the parties hereto **relating to** [1] any Covered Asset Purchase SRA Report Exceptions, [2] Post-Closing Expense Items, [3] Post-Closing Receipt Items, [4] AmWest Dispute Items, or [5] **any disputes regarding a party's obligations under this Agreement** (collectively, a "**Dispute Item**"), which AmWest[1] and the FDIC Manager are unable to amicably resolve, then either party may submit each specific unresolved Dispute Item to arbitration pursuant to the provisions of this Section 6.1.

Termination Agreement § 6.1(a) (emphasis supplied) (Ex. C hereto). The arbitration clause goes

---

[1] AmWest is the predecessor to Citibank, N.A.

on to state that "[t]he parties intend that to the maximum extent possible, but otherwise consistent with the provisions of the Agreement, arbitration shall be the **sole** dispute resolution process regarding any Dispute Item that is not amicably resolved." *Id.* § 6.1 (emphasis supplied). It also provides that "arbitration pursuant to this Article VI is the **exclusive** remedy of the parties hereto with respect to any Dispute Item." *Id.* § 6.3 (emphasis supplied).

### A.    Factual Background

#### 1.    The Assistance Agreement and The Termination Agreement

This case arises out of two related contracts among three parties:  (1) an October 14, 1988 Assistance Agreement ("Assistance Agreement," Ex. D hereto), as modified by (2) a July 31, 1996 Termination Agreement ("Termination Agreement," Ex. C hereto). These contracts relate to the 1988 sale of the assets and certain liabilities of 11 insolvent Texas savings and loan institutions seized by the Federal Savings & Loan Insurance Corporation ("FSLIC")[2] after they had fallen into insolvency. First American Bank, SSB ("FAB"),[3] an indirect subsidiary of TACG, bought those assets. TACG's Petition to Compel Arbitration ("TACG Pet.") ¶ 5.

In the Assistance Agreement, FSLIC promised FAB various forms of financial assistance. *Id.* ¶¶ 43, 50-61. For example, FSLIC agreed to reimburse FAB for its losses on assets acquired from the insolvent thrifts. *Id.* ¶ 43. Under then-applicable tax law, the TACG

---

[2] The FDIC, as Manager of the FSLIC Resolution Fund, succeeded to the contract after Congress abolished FSLIC in the Financial Institution Reform, Recovery and Enforcement Act of 1989, Pub. L. 101-73 (codified in relevant part at 12 U.S.C. § 1821(a)).

[3] The initial purchaser was NuOlney Savings Association, which went through several name changes and mergers and came to be known as First American Bank, SSB. Today it is a part of Nominal Petitioner, Citibank, N.A. ("Citibank"). We refer to this institution in its various forms as "First American Bank" or "FAB."

Consolidated Group (of which FAB was a member)[4] was entitled to claim such losses as a federal income tax deduction, notwithstanding these reimbursements. *Id.* ¶ 43. FAB agreed to pay to FSLIC a portion of the economic value of certain tax benefits that the Consolidated Group of which FAB was a member received as a result of its acquisition of the failed savings and loans associations. Thus, during the period when FAB was a member of the TACG Consolidated Group, Section 9 of the Assistance Agreement required a yearly computation of the difference between the TACG Consolidated Group's *actual* tax liability and a *hypothetical* tax liability calculated by adjusting for a series of contractually specified "Tax Benefit Items" and "Tax Detriment Items." *Id.* ¶ 56. To the extent that the hypothetical tax liability exceeded the actual tax liability, FAB was required to pay 60% of that difference to FSLIC. *Id.*

Given the detailed and highly technical computations required to calculate FAB's tax-sharing liability, the parties foresaw the possibility of errors and included a provision in the Assistance Agreement to allow them to remedy such errors. *Id.* ¶¶ 76-77; Assistance Agr. § 6(d).

In 1996, the Termination Agreement terminated the Assistance Agreement but (1) continued the tax-benefit sharing obligations as governed by Section 9 of the Assistance Agreement (TACG Pet. ¶ 69; Term. Agr. § 7.2(b)), (2) maintained the parties' ability to make subsequent adjustments pursuant to Section 6(d) of the Assistance Agreement (TACG Pet. ¶¶ 77-78; Term. Agr. § 7.2(b)), and (3) clarified, modified, and amended the methodology of computing FAB's tax-sharing liability. TACG Pet. ¶¶ 77-78; Term. Agr. § 7.2(b)(i)-(ix). These

---

[4] A "consolidated group" of corporations may file a consolidated return, subject to regulations promulgated under Internal Revenue Code § 1502. TACG was the parent corporation of an affiliated group of corporations eligible to file such a return.

changes altered the required annual computations. Thus, after 1996, the computation of FAB's

tax-sharing liability for any given year required application of the terms of *both* the Assistance

Agreement *and* the Termination Agreement.

Finally, the Termination Agreement added the arbitration clause, quoted above, in which

the parties agreed to arbitrate "**any** dispute . . . relating to . . . **any** disputes regarding a party's

obligation under [the Termination] Agreement." Term. Agr. § 6.1(a) (emphasis added).

### 2.    The Dispute

The Court need not delve into the merits of the dispute to determine the threshold

question of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22-

23 (1983). It is sufficient for present purposes to summarize. TACG sold the stock of FAB to

Citigroup Inc. in 2005. Around that time, TACG realized that FAB had miscalculated its tax-

benefit sharing obligations under the Assistance Agreement (as modified by the Termination

Agreement) and had overpaid the FDIC approximately $41 million. TACG Pet. ¶ 74. Under its

Stock Purchase Agreement with Citigroup Inc., TACG is entitled to the economic benefits and

burdens of FAB's rights and obligations to the FDIC for periods prior to the 2005 closing.

TACG Pet. ¶ 8.

Exercising its contractual rights, TACG asked the FDIC to disgorge the $41 million

overpayment. The FDIC refused. Later, the FDIC made a counter-demand for approximately

$157.3 million, claiming that FAB had actually underpaid its tax-benefit sharing obligations in

breach of § 9 of the Assistance Agreement as modified by the Termination Agreement. *See*

Exhibits E and G to Declaration of Patrick E. Mitchell in Support of TACG's Opposition to the

FDIC's Motion to Transfer ("Mitchell Decl.," Ex. E hereto).

## B.     The Dispute Is Arbitrable

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. § 4. Thus, the Court must direct the parties to arbitration if (1) "the parties entered into a valid and enforceable arbitration agreement and . . . (2) the arbitration agreement encompasses the claims raised in the complaint." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002) (Walton, J.).

The FDIC does not dispute that the arbitration clause in the Termination Agreement is a valid and enforceable agreement to arbitrate. Therefore, the only contested question is whether that clause encompasses the dispute described above. It is the FDIC's burden to prove that it does not. *See Dowley v. Dewey Ballantine, LLP*, Civ. Action No. 05-622, 2006 WL 1102768, at *3 (D.D.C. Apr. 26, 2006) (Sullivan, J.). Indeed, "[t]he FAA creates a strong presumption in favor of enforcing arbitration agreements and '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F. Supp. 2d 64, 67 (D.D.C. 2006) (Urbina, J.) (citation omitted).

### 1.     The Plain Language of the Contract Covers This Dispute

The arbitration clause covers five categories of "Dispute Items" that are subject to arbitration. Categories [1] through [4] cover specific Dispute Items. Category [5] of the clause applies to "**any** dispute . . . **relating to** . . . **any** disputes regarding a party's obligations under this

Agreement." Term. Agr. § 6.1 (emphasis supplied). Category [5] explicitly covers the dispute at hand.

The parties' intent is to be discerned from the plain language of the contract. *See generally Flynn v. Southern Seamless Floors, Inc.*, 460 F. Supp. 2d 46, 54 (D.D.C. 2006) (Walton, J.); *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 9 (D.D.C. 2000) (Urbina, J.) ("[W]hen the contract language is clear, the proper interpretation of the contract is a matter of law.").

The arbitration clause's use of the phrase "relating to" connotes a so-called "broad" arbitration provision. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 617, 624 n.13 (1985) (arbitration clause providing for arbitration of "[a]ll disputes, controversies or differences which may arise between [the parties] out of or in relation to" the parties' agreement was interpreted broadly); *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("relate to" indicates a broad arbitration clause); *Pervel Indus., Inc. v. TM Wallcovering, Inc.*, 871 F.2d 7, 8 (2d Cir. 1989) (arbitration clause providing for arbitration of "any controversy 'relating to this contract'" interpreted broadly); *Dowley*, 2006 WL 1102768, at *8 (finding phrase "arising out of" to be broad, even in absence of phrase "relating to"). As such, arbitration is appropriate if the dispute at issue is "governed by" or "touch[es] upon" the Termination Agreement. *Wolff v. Westwood Mgmt., LLC*, 503 F. Supp. 2d 274, 282 (D.D.C. 2007) (citing *Peerless Imp., Inc. v. Wine, Liquor & Distillery Workers Union, Local One*, 903 F.2d 924, 927 (2d Cir. 1990) (broad arbitration clause encompasses claims "governed by" the contract) and *Mitsubishi*, 473 U.S. at 624 n.13 (1985) (broad arbitration clause encompasses claims that "touch upon" the contract)); *see also Pennzoil Exploration*, 139 F.3d at 1067 ("Broad arbitration clauses . . . embrace all disputes between the

parties having a significant relationship to the contract regardless of the label attached to the dispute.") (citations omitted).

"[T]he court must bear in mind that '[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Wolff*, 503 F. Supp. 2d at 282 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Dowley*, 2006 WL 1102768, at *8 ("[U]nless the language excluding certain disputes from arbitration is clear and unambiguous, arbitration should be ordered.").

The dispute here not only "*relates to*" a "dispute[] regarding a party's obligations under [the Termination] Agreement"; it *is* a dispute regarding a party's obligation under the Termination Agreement. Any tax-benefit sharing computations were established by the Assistance Agreement and modified by the Termination Agreement. Any dispute as to how the tax-sharing obligations are calculated thus requires reference to the Termination Agreement and therefore relates to the Termination Agreement.[5]

The FDIC's Amended Complaint in the action it initiated in this Court, *FDIC v. The Adam/Corporation Group*, No. 1:07-cv-02163-RMU (Ex. F hereto), acknowledges that this

---

[5] Even an arbitration clause in one of a series of related agreements is broad enough to require arbitration of a controversy arising *exclusively* from an agreement with no arbitration clause. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067-68 (5th Cir. 1998) (citing cases). In *Pennzoil*, the parties had a series of agreements—some with arbitration clauses, some without. The particular dispute between the parties centered on an agreement with no arbitration clause. Nonetheless, the Court held in favor of arbitration because "[i]n addition to being related to the same overriding goal, the agreements themselves evidence their interrelationship." *Id.* at 1068. Those forms of interrelationship are present here, as well. The overriding goal of both Section 9 of the Assistance Agreement and the Termination Agreement was to provide for the continuing sharing of tax benefits in accordance with the parties' agreement. And the Termination Agreement plainly references the Assistance Agreement, continues it, clarifies it, and amends it. As in *Pennzoil*, the interrelationship is evidenced by the overarching goals and the text of the Termination Agreement.

dispute arises under the Termination Agreement. FDIC Am. Compl. ¶¶ 6, 9. There, the FDIC

alleges that "the Termination Agreement expressly provided that Section 9 of the Assistance

Agreement, and certain other specified provisions, survived the termination and remained

binding on the parties." *Id.* ¶ 9. The FDIC's Amended Complaint then sets forth the following

definition: "For purposes of this Complaint, the surviving Section 9, **as modified by the**

**Termination Agreement**, shall be referred to as Section 9." *Id.* (emphasis added). The FDIC's

Amended Complaint refers to "Section 9" in 26 of the next 41 paragraphs. *Id.* ¶¶ 10-50. In

addition, the FDIC invoked a venue clause in the Termination Agreement, permitting venue in

the District of Columbia (or Texas) for "legal action or proceedings **with respect to this**

**Agreement**." *Id.* ¶ 4 (citing Term. Agr. § 13.4). Thus, the FDIC has admitted in at least 27

paragraphs of that Complaint that the present dispute relates to the Termination Agreement.

### 2.    The FDIC's Parol Evidence Supports Arbitration

When the parties previously briefed this issue in the Northern District of Texas, the FDIC

submitted a declaration by one of its lawyers. Declaration of Charles Fulton ("Fulton Decl.", Ex.

G hereto). The declaration contended that the FDIC secretly intended to limit arbitration to

something supposedly called a "true up" process for "arbitrat[ing] only lingering, minor disputes

over the FDIC's payment of assistance to TAC [*sic*] that were outstanding at the time of, or arose

shortly after the closing of the Termination Agreement." Fulton Decl. ¶ 5. Several things can be

said about this offer of parol evidence.

*First*, the offer of parol evidence was an extraordinarily damaging admission. It is black

letter law that parol evidence is admissible only to resolve a contractual ambiguity.[6] However,

---

[6] *Pacific Gas and Elec. Co. v. Federal Energy Regulatory Comm'n*, 326 F.3d 243, 246 (D.C. Cir. 2003) ("absent a finding of ambiguity parol evidence is inadmissible (even to determine ambiguity)."); *Charlton v. Evanston Ins. Co.*, 502 F. Supp. 2d 553, 558 (W.D. Tex. 2007) (courts will not look to parol evidence to determine meaning of contract

Footnote continued on next page

"ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hudson, Inc.*, 514 U.S. 52, 62 (1995) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989)); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (same); *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("'[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration.' Moreover, '[t]he weight of this presumption is heavy.'") (citations omitted); *Stromberg*, 448 F. Supp. 2d at 67 ("The FAA creates a strong presumption in favor of enforcing arbitration agreements and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987)); *see also Moses H. Cone*, 460 U.S. at 24-25 (same).

Thus, by the mere act of offering parol evidence, the FDIC admitted that its *best argument* was that the contract was ambiguous—and in cases of arbitration clauses, ambiguities are to be resolved *in favor of arbitration*.

*Second*, the FDIC is simply wrong when it argues that the contract language is ambiguous. In fact, the FDIC's offer of parol evidence was an improper attempt to contradict the plain language of the arbitration clause by ignoring Category [5], which covers "**any** dispute . . . relating to . . . **any** disputes regarding a party's obligations under" the Termination Agreement. Term. Agr. § 6.1(a) (emphasis added). Category [5] has no limiting language. It covers **any** dispute regarding a party's obligations under the contract.

---

Footnote continued from previous page
unless the contract is ambiguous); *see also Phoenix Network Tech. (Europe) Ltd. v. Neon Sys. Inc.*, 177 S.W.3d 605, 615 (Tex. App.-Houston 2005) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951) (when a contract is unambiguous, parol evidence is not considered)).

The FDIC is bound by the ordinary meaning of this language. *Flynn*, 460 F. Supp. 2d at 54; *see also Howell v. Dist. of Columbia*, 522 F. Supp. 2d 57, 63 (D.D.C. 2007) (Urbina, J.) ("Pursuant to D.C. contract law, '[w]here the language in question is unambiguous, its interpretation is a matter of law for the court. A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.'") (citation omitted) (ellipses in original). If the parties had intended to limit arbitration to certain enumerated "Dispute Items," the contract would not have included Category [5] at all. *See Wolff*, 503 F. Supp. 2d at 282-83 (refusing to read limitation into arbitration provision because "[t]he parties could have expressly limited the reach of the agreement but did not.").

*Third*, the FDIC's undocumented declaration cannot be reconciled with the actual documentary evidence. That evidence is set out in the Declaration of Patrick Mitchell and need not be repeated here. *See* Mitchell Decl.

## II.    In the Alternative, the Court Should Transfer This Case to the Northern District of Texas Pursuant to 28 U.S.C. § 1404(a)

If the Court does not compel arbitration, it should transfer the case for two independent reasons. *First*, the Court should consider the effect of a portion of the FAA, 9 U.S.C. § 4, which instructs the Court to direct the parties to arbitration "within the district in which the petition for an order directing such arbitration is filed." *Second*, in the unlikely event that the Court does not compel arbitration, it should retransfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

### A.    The Court Should Transfer if It Concludes That It Cannot Compel Arbitration in Dallas, Texas by Operation of 9 U.S.C. § 4

The contract provides that "arbitration proceedings shall take place in Dallas, Texas."

Term. Agr. § 6.1(c). The FAA states that, upon a meritorious petition to compel arbitration,

"[t]he court shall make an order directing the parties to proceed to arbitration in accordance with

the terms of the agreement . . . *within the district in which the petition for an order directing such*

*arbitration is filed.*" 9 U.S.C. § 4 (emphasis supplied). Petitioners filed the Petition for an order

directing arbitration in the Northern District of Texas.

However, there is some question as to the power of a District Court to order arbitration in

a District other than the one in which it sits. Some courts have viewed Section 4's geographical

restriction in jurisdictional terms and ruled that they simply lack the authority to compel

arbitration outside of their districts.[7] Others, including the Fifth Circuit,[8] have ruled that the

FAA's geographical restriction may be waived, like a venue provision.[9]

We respectfully submit that under either line of cases, this Court has the power and duty

to order arbitration in Dallas, Texas. If the Court agrees with the Fifth Circuit that the FAA's

geographical restriction is waivable, the Court should order the parties to arbitration in Dallas,

---

[7] *See, e.g., Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327-28 (7th Cir. 1995); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003); *Bosworth v. Ehrenreich*, 823 F. Supp. 1175, 1180 (D.N.J. 1993).

[8] Although this action was transferred from a District Court within the Fifth Circuit, this Court must follow D.C. Circuit precedent on questions of federal law. *See In Re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1774-75 (D.C. Cir. 1987).

[9] *See, e.g., Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1046-47 (10th Cir. 2006) ("[A]lthough this court has previously held that a district court does not have the authority . . . to compel arbitration in another district, this was not a jurisdictional prerequisite, but was instead a venue requirement that the parties have waived in this case"); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784 (9th Cir. 2001); *City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182, 184 (5th Cir. 1974) ("Section 4's statement about the proper locale for an arbitration hearing compelled by a federal court is analogous to a venue provision, and thus is waivable") (footnote omitted), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000); *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir. 1987) ("[W]here a party seeking to avoid arbitration brings a suit for injunctive relief in a district court other than that in which arbitration is to take place . . . the party seeking arbitration may assert its section 4 right to have the arbitration performed in accordance with the terms of the agreement." (quoting *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1278 (5th Cir. 1975))).

Texas, based on the FDIC's waiver of objections to venue in this Court. *See* Term. Agr. § 13.4 (permitting venue in D.C. or Texas). If the Court finds that this statute is jurisdictional in nature, we believe it was satisfied by the filing of the Petition in the Northern District of Texas. That statute provides that arbitration shall be ordered "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

However, if the Court determines that the statute does not give it jurisdiction to order arbitration in Dallas as the contract requires, then the Court should send the case back to the Northern District of Texas for an order from that Court compelling arbitration. *See, e.g.*, *Bosworth v. Ehrenreich*, 823 F. Supp. 1175, 1180 (D.N.J. 1993) (D.N.J. court, upon ruling that FAA prohibited it from ordering arbitration in New York, transferred case to the S.D.N.Y. pursuant to 28 U.S.C. § 1406(a) "to further the intent of the parties as expressed in [the arbitration clause].").

**B.    Even in the Absence of Arbitration, the Case Should Be Tried in Texas**

In the unlikely event that the Court does not compel arbitration, this case should still be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

The Texas Court transferred to this Court after finding that the parallel case (No. 1:07-cv-02163-RMU) was filed in this Court 59 minutes earlier than this case was filed in Texas. The Texas Court concluded that under the Fifth Circuit's "first-to-file" rule, this Court should "decide 'whether the second suit filed must be dismissed, stayed, or transferred and consolidated.'" Recommendation at 7 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)). The Magistrate's Recommendation of transfer "does not address, and expresses no opinion on, whether a transfer pursuant to § 1404(a) would be proper," *id.* at 8 n.3, and the

District Judge's Order confirms that the Texas Court did not "reach the question of whether a section 1404(a) transfer was appropriate." Transfer Order at 2.

To support a transfer pursuant to § 1404(a), the movant must show (1) that the proposed transferee forum is one in which the action might have been brought and (2) that the various private and public interest factors weigh in favor of a transfer. *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 177 (D.D.C. 2007) (Urbina, J.); *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996) (Urbina, J.).

### 1.    This Action "Might Have Been Brought" in the Northern District of Texas

"The threshold question under section 1404(a) is whether the suit 'might have been brought' in the district to which the movant seeks to have it transferred." *Investors Funding Corp. of N.Y. v. Jones*, 495 F.2d 1000, 1003 n.8 (D.C. Cir. 1974). Petitioner properly filed this action in the Northern District of Texas. The Northern District of Texas has subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331, and the parties consented to both personal jurisdiction and venue in that District. *See* Term. Agr. § 13.4.[10]

### 2.    The Private Interest Factors Weigh in Favor of Transferring to the Northern District of Texas

Under § 1404(a), the relevant private interest factors include: (i) the plaintiff's choice of forum; (ii) the defendant's choice of forum; (iii) whether the claim arose elsewhere; (iv) the

---

[10] In contrast, there is substantial doubt whether Petitioner could have commenced an action to compel arbitration in this Court. *See supra* pp. 10-12 & nn. 7-9. Under section 1404(a), the plaintiff must have had an "unqualified right" to bring the action in the transferee forum at the time of the commencement of the action. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). As the court explained in *Shutte*: "Prior to ordering a transfer the district court must make a determination that the suit could have been rightly started in the transferee district. If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause in the transferee forum." 431 F.2d at 24 (citations omitted).

convenience of the parties; (v) the convenience of the witnesses; and (vi) the ease of access to

sources of proof. *Barham*, 496 F. Supp. 2d at 177; *Trout Unlimited*, 944 F. Supp. at 16. These

factors weigh strongly in favor of the Northern District of Texas.

### a.    The Petitioners' Choice of Forum

Petitioners' choice of forum—the Northern District of Texas—should be accorded

deference. *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998)

(Harris, J.) ("Plaintiff's choice of forum is due substantial deference . . . . This is particularly

true where, as here, plaintiff is a resident of the chosen forum and the activities forming the basis

of the suit have a significant connection with the forum.").

### b.    The FDIC's Choice of Forum

The FDIC has argued previously that its choice of forum is entitled to greater deference

on the theory that its action was filed 59 minutes before TACG's. Courts in this District do not

determine where an action should proceed on such grounds. *See, e.g., Handy v. Shaw,*

*Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003) ("Although some courts make

this determination by using the so-called 'first-to-file' rule . . . we have emphasized that the

district court must balance equitable considerations rather than using a mechanical 'rule of

thumb.'") (citations omitted); *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627

(D.C. Cir. 1975) ("In our view, however, choice of forum cannot suitably be made by

mechanical application of [the first-to-file] principle. . . . [C]ountervailing equitable

considerations, where present, cannot be ignored."); *Federal Deposit Insurance Corporation v.*

*Bank of New York*, 479 F. Supp. 2d 1, 12-13 (D.D.C. 2007) (Huvelle, J.) ("The [first-to-file] rule

should not be applied when equitable considerations favor adjudication of the later-filed case,"

and "the interests of justice clearly militate against application of the first-filed rule when, as

here, the time period between the filing of the two suits is only a matter of hours.") (internal

quotations omitted); *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992)

(Lamberth, J.) ("Although, the fact that defendants filed their Minnesota case two days prior to

the plaintiffs' filing here is relevant, it cannot obscure the fact that equitable concerns and the

interest of justice dictate that the action proceed in this court.").

A trivial difference in time of filing (59 minutes) is not entitled to any weight in

determining the forum in which this action should proceed.

> c.    **This Dispute Is Focused on Texas, Not the District of Columbia**

The great majority of the events relevant to this dispute, including the inducement to and

formation of the contractual relationship, occurred in the Northern District of Texas. *See*

Mitchell Decl. ¶¶ 2-8, 23-24. The alleged breaches themselves occurred in either the Northern

District of Texas or the Eastern District of Virginia, not in the District of Columbia. *See id.*

¶¶ 23-25. These facts weigh heavily in favor of transfer.

TACG is and always has been headquartered in Texas. *Id.* ¶ 1. It has (and FAB had) no

connection with Washington, D.C. other than entering into the Assistance and Termination

Agreements with a federal agency headquartered there. *Id.* ¶ 4. The contractual relationship

between TACG and the FDIC began when FSLIC began an effort in Texas to secure a Texas

buyer for failed thrifts located in Texas. *Id.* ¶ 2. FSLIC and the Internal Revenue Service

actively marketed insolvent thrifts to potential buyers in Texas, such as TACG. *Id.* ¶ 2. FSLIC's

marketing strategy, which it called the Southwest Plan, included providing written materials to

potential buyers in Texas, such as TACG. *Id.* ¶ 3. TACG's negotiations with FSLIC to acquire

insolvent thrifts began in Texas, and then continued in Washington, D.C. *Id.* FSLIC

representatives from its Dallas office were active participants in the negotiations. *Id.* These

negotiations culminated in 1988 in Dallas, Texas, where TACG, FAB, and FSLIC executed a series of related documents, including the Assistance Agreement. *Id.*

Between 1988 and 1996, the FDIC's Dallas office was intimately involved in the administration of the Assistance Agreement. *Id.* ¶ 5. Representatives of the FDIC's Dallas office (such as Bryceon Sumner, Kathy Mansfield, Jim Weaver and Bob Greene) were responsible for daily monitoring of FAB's compliance with the Assistance Agreement and related documents. *Id.*

Negotiations for the 1996 Termination Agreement took place in both Dallas and Washington, D.C., and the Termination Agreement was executed in Bryan, Texas by TACG and FAB. *Id.* ¶¶ 6, 8. Thus, the overwhelming majority of conduct establishing and carrying out the contractual relationship among the parties took place in Texas.

When this dispute arose, the relationship between TACG and the FDIC was carried out by TACG officers in Bryan, Texas and the FDIC's Division of Finance in Arlington, VA. Starting in 2006, TACG demanded return of approximately $40 million in overpayments from the FDIC's Arlington, VA office. Mitchell Decl., Ex. F. In 2007, the FDIC's Division of Finance sent letters from its Arlington, VA office to TACG in Bryan, Texas, demanding over $165 million in tax benefit payments. Mitchell Decl., Ex. H. Therefore, the alleged breaches of contract and other claims in this dispute arose in the Northern District of Texas and in the Eastern District of Virginia, <u>not</u> in the District of Columbia.

### d.    The Convenience of the Parties

Each party is capable of litigating this dispute in either forum. However, the FDIC maintains an office in Dallas, Texas, while TACG has never had offices in or near the District of Columbia. In addition, the FDIC already agreed to arbitrate disputes in Dallas, so it cannot

complain that Dallas would present practical problems for trial. Therefore, this factor weighs in favor of transfer to the Northern District of Texas.

### e.    Convenience of the Witnesses

As this Court has noted, "'[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses.'" *Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83, 87 (D.D.C. 2008) (Urbina, J.) (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995)). "Courts have consistently transferred actions when the majority of witnesses live near the transferee forum." *Id.* at 87 (quoting *Claasen v. Brown*, No. Civ. A. 94-1018 (GK), 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996)). In this case, the majority of the witnesses are located in Texas, and many more of them are subject to the subpoena power of the Northern District of Texas, weighing heavily in favor of transfer.

TACG has identified 25 potential witnesses who may have relevant testimony in the arbitration concerning the parties' entry into the Assistance Agreement, their performance of the Assistance Agreement, their modification of Section 9 in the Termination Agreement, or their computation of tax-benefit sharing payments under Section 9. Declaration of Kent A. Yalowitz in Support of Petitioner's Opposition to FDIC's Motion to Transfer ("Yalowitz Decl.," Ex. H hereto) ¶ 5. Of the 25 witnesses, 21 are subject to the subpoena power of the Northern District of Texas (either by virtue of their location in Texas or their affiliation with a party in the case). In contrast, only nine such witnesses are subject to the subpoena power of this Court and of those nine, only two are beyond the Texas Court's subpoena power. (Two potential witnesses appear to be beyond either Court's subpoena power.) *Id.* ¶ 6. The following chart lists the names, present affiliations, and locations of these potential witnesses. Next to each witness is an

indication of whether the witness is within the subpoena power (either by geography or by virtue

of control by a party) of the Northern District of Texas Court and of this Court:

| Name | Present Affiliation | Location | Available in N.D. Tex. | Available in D.D.C. |
|---|---|---|---|---|
| Donald Adam | TACG | Bryan, TX | x | x |
| William Atkinson | Unaffiliated | Bryan, TX | x | |
| Fred Bartz | KPMG | San Antonio, TX | x | |
| Cleave Buchanan | Unknown | Dallas, TX | x | |
| Paul Darmitzel | Unknown | Houston, TX | x | |
| Michael Duhl | Unknown | Winnetka, IL | | |
| John Henry | Squire Sanders | Washington, DC | | x |
| Richard Hodge | Unknown | Dallas, TX | x | |
| Doug Hughston | Unknown | Ft. Worth, TX | x | |
| Michael Johnston | Unknown | Houston, TX | x | |
| Keith Kuttler | TACG Consultant | Bryan, TX | x | x |
| Steve Lower | Retired | Reno, NV | | |
| Tom Lykos | Unknown | Dallas, TX | x | |
| Kathy Mansfield | Unknown | Dallas, TX | x | |
| Howard Matthews | FDIC | Arlington, VA | x | x |
| Mark Mesec | Unaffiliated | Dallas, TX | x | |
| Patrick Mitchell | TACG Counsel | Dallas, TX | x | x |
| Jay Niederhauser | TACG Consultant | Park City, UT | x | x |
| Richard Sexton | Unknown | Houston, TX | x | |
| Tim Spencer | Unknown | Midland, TX | x | |
| Bryceon Sumner | Unknown | Dallas, TX | x | |
| Barry Taff | Silver, Freedman & Taff | Washington, DC | | x |
| Lars Viitala | FDIC Contractor | Harrison, ME | x | x |
| Jim Weaver | Retired | Dallas, TX | x | |
| James Wolfe | TACG | Bryan, TX | x | x |

*Id.* ¶ 6.

## f.    Access to Sources of Proof

Setting aside the location of witnesses and availability of subpoena power, this factor is

neutral in light of the amount in controversy and the availability of electronic data storage.

TACG's documents are in Texas, and Citibank's (formerly FAB's) documents are in Texas, New

Jersey and Florida. Mitchell Decl. ¶ 4; Yalowitz Decl. ¶¶ 2, 4. Documents of TACG's advisors

are in Texas, Utah and Virginia. Yalowitz Decl. ¶ 4. The documents of the FDIC are in the

FDIC's Arlington, Virginia office or are stored in a warehouse in Maryland. *Id.*

### 3.    The Public Interest Factors Weigh in Favor of Transferring to Northern District of Texas

Public interest factors include "(i) the transferee's familiarity with governing laws; (ii) the relative congestion of the calendars of the potential transferee and transferor courts; and (iii) the local interest in deciding local controversies at home." *Barham*, 496 F. Supp. 2d at 179; *Trout Unlimited*, 944 F. Supp. at 16.

#### a.    Familiarity with Governing Law

In the absence of an arbitrable controversy, this factor favors transfer to the Northern District of Texas, because the Termination Agreement calls for application of Texas law to the extent that federal law does not govern. Term. Agr. § 13.4.

#### b.    Court Congestion

"[R]elative docket congestion and potential speed of resolution is an appropriate factor to be considered." *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974). "To determine which district is more congested, relevant statistics are median months from filing to disposition in district, and median months from filing to trial." *Gajeske v. Wal Mart Stores, Inc.*, No. 1:99-CV-777, 2000 WL 34401691, at *5-6 (E.D. Tex. June 26, 2000) (following *Law Bulletin Publ'g Co. v. LRP Publ'n, Inc.*, 992 F. Supp. 1014, 1020 (N.D. Ill. 1998)); *see Tellis Software, Inc. v. PokerTek, Inc.*, No. G-07-00072, 2007 WL 2314316, at *8 (S.D. Tex. Aug. 10, 2007) (same statistics); *LG Elec., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 593 n.15 (D.N.J. 2001) (same); *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 904 (N.D. Ill. 2001) (same). The speed-to-trial and speed-to-disposition statistics plainly weigh in favor of the Texas Court, which is more than a year faster to trial than the District Court for the District of Columbia.

|  | N.D. Tex. | D.D.C. |
|---|---|---|
| Median months from filing to trial for the 12 months ended 12/31/06[11] | 21.0 | 37.5 |
| Median months from filing to trial for the 12 months ended 9/30/06[12] | 20 | 37.0 |
| Median months from filing to disposition for the 12 months ended 12/31/06[13] | 7.6 | 10.5 |
| Median months from filing to disposition for the 12 months ended 9/30/06[14] | 7.4 | 10.2 |

### c.    Texas's Interest in This Dispute

There is a strong local interest in resolving this dispute in Texas, as acknowledged in the FDIC's contractual agreement to arbitrate in Dallas.  Indeed, as shown above (pp. 15-16), the overwhelming majority of events relevant to this dispute occurred in Texas, many within the Northern District of Texas.

TACG has (and FAB had) no connection with Washington, D.C. other than entering into the Assistance and Termination Agreements with a federal agency that was headquartered there. Compare this with the FDIC's connection to Texas.  The FDIC (and FSLIC) decided to focus an effort in Texas to secure a Texas buyer, such as TACG, to purchase failed thrifts located in Texas, and then to employ FDIC representatives in its Dallas field office to administer and monitor its relationship with FAB.  This factor weighs in favor of transfer.

---

[11] ADMINISTRATIVE OFFICE OF THE U.S. COURTS, STATISTICAL TABLES FOR THE FEDERAL JUDICIARY, Dec. 31, 2006, Table C-5, *available at* http://www.uscourts.gov/stats/dec06/C05Dec06.pdf

[12] ADMINISTRATIVE OFFICE OF THE U.S. COURTS, 2006 JUDICIAL BUSINESS OF THE UNITED STATES COURTS, Table C-10, *available at* http://www.uscourts.gov/judbus2006/appendices/c10.pdf.

[13] STATISTICAL TABLES FOR THE FEDERAL JUDICIARY, *supra* note 11.

[14] ADMINISTRATIVE OFFICE OF THE U.S. COURTS, 2006 JUDICIAL BUSINESS OF THE UNITED STATES COURTS, Table C-5, *available at* http://www.uscourts.gov/judbus2006/appendices/c5.pdf.

## CONCLUSION

TACG respectfully requests that this Court compel the parties to arbitrate in the pending arbitration in Dallas, Texas pursuant to the Federal Arbitration Act. In the alternative, the Court should transfer this case to the Northern District of Texas.

Dated: May 6, 2008

Respectfully submitted,

**ARNOLD & PORTER, LLP**

By: _____
Kent A. Yalowitz
(*pro hac vice* admission pending)
Erik Walsh
(*pro hac vice* admission pending)
399 Park Avenue
New York, NY 10022
(212) 715-1000
Email: Kent.Yalowitz@aporter.com

Michael A. Johnson
D.C. Bar # 460879
555 12th Street, N.W.
Washington, DC 20007
(202) 942-5000
Email: Michael.Johnson@aporter.com

*Attorneys for Petitioner/Plaintiff The Adam Corporation/Group*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ADAM CORPORATION/GROUP,
     1111 Briarcrest Drive, Suite 300
     Bryan, Texas 77802,

                      Petitioner/Plaintiff,

&ndash; AND &ndash;

CITIBANK, N.A.,
     399 Park Avenue
     New York, New York 10022,

           Nominal Petitioner/Nominal Plaintiff,

&ndash; AGAINST &ndash;

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,
     550 17th Street, N.W.
     Washington, D.C. 20429,

              Respondent/Defendant.

1:08-cv-00753 (RMU)

## NOTICE REGARDING VOLUMINOUS EXHIBITS

Pursuant to LCvR 5.4(e)(1), notice is hereby served that the exhibits to The Adam Corporation/Group's Renewed Motion to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the Northern District of Texas have been filed on this date in paper form with the Clerk's Office of the United States District Court for the District of Columbia.

Dated: May 6, 2008

Respectfully submitted,

**ARNOLD & PORTER LLP**

By: /s/ Michael A. Johnson
Michael A. Johnson (D.C. Bar No. 460879)
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000
(202) 942-5999 (fax)

*Attorneys for Petitioner/Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE ADAM CORPORATION/GROUP,

                          Petitioner/Plaintiff,

— AND —

CITIBANK, N.A.,

                Nominal Petitioner/Nominal Plaintiff,

— AGAINST —

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,

                    Respondent/Defendant.

1:08-cv-00753 (RMU)

## [PROPOSED] ORDER

       Before the Court is Petitioner/Plaintiff The Adam Corporation/Group's Renewed Motion

to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the

Northern District of Texas in the above captioned matter.  Having considered the parties'

submissions and the applicable law, the court hereby grants Petitioner/Plaintiff's Motion to

Compel Arbitration.  The parties are ordered to submit to arbitration in accordance with Article

VI of the July 31, 1996 Termination Agreement between First American Bank Texas, SSB, The

Adam Corporation/Group and The Federal Deposit Insurance Corporation, as Manager of the

FSLIC Resolution Fund.

It is so ordered this ___ day of _____, 2008.

_____
Ricardo M. Urbina
United States District Court Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE ADAM CORPORATION/GROUP,

                        Petitioner/Plaintiff,

&minus; AND &minus;

CITIBANK, N.A.,

                 Nominal Petitioner/Nominal Plaintiff,

&minus; AGAINST &minus;

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,

                 Respondent/Defendant.

1:08-cv-00753 (RMU)

### [PROPOSED] ORDER

       Before the Court is Petitioner/Plaintiff The Adam Corporation/Group's Renewed Motion

to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the

Northern District of Texas in the above captioned matter. Having considered the parties'

submissions and the applicable law, the Court hereby rules that this case is subject to arbitration

in Dallas, Texas pursuant to Article VI of the July 31, 1996 Termination Agreement between

First American Bank Texas, SSB, The Adam Corporation/Group and The Federal Deposit

Insurance Corporation, as Manager of the FSLIC Resolution Fund. However, pursuant to 9

U.S.C. § 4, this Court does not have the authority to order the parties to arbitrate in Dallas,

Texas. Pursuant to 28 U.S.C. § 1406(a), the Court hereby transfers this action to the United

States District Court for the Northern District of Texas for an order from that Court compelling arbitration.

It is so ordered this ___ day of _____, 2008.

_____
Ricardo M. Urbina
United States District Court Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ADAM CORPORATION/GROUP,

Petitioner/Plaintiff,

— AND —

CITIBANK, N.A.,

Nominal Petitioner/Nominal Plaintiff,

— AGAINST —

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,

Respondent/Defendant.

1:08-cv-00753 (RMU)

## [PROPOSED] ORDER

Before the Court is Petitioner/Plaintiff The Adam Corporation/Group's Renewed Motion to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the Northern District of Texas in the above captioned matter. Having considered the parties' submissions and the applicable law, the Court hereby grants Petitioner/Plaintiff's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). This case is hereby transferred to the United States District Court for the Northern District of Texas.

It is so ordered this ___ day of _____, 2008.

_____
Ricardo M. Urbina
United States District Court Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE ADAM CORPORATION/GROUP,

                         Petitioner/Plaintiff,

   — AND —

CITIBANK, N.A.,

              Nominal Petitioner/Nominal Plaintiff,

   — AGAINST —

FEDERAL DEPOSIT INSURANCE
CORPORATION, SOLELY IN ITS CAPACITY AS
MANAGER OF THE FSLIC RESOLUTION
FUND,

                     Respondent/Defendant.

1:08-cv-00753 (RMU)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that true and correct copies of Petitioner/Plaintiff's:

- Renewed Motion to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the Northern District of Texas;

- Memorandum in Support of Renewed Motion to Compel Arbitration, or, in the Alternative, to Return this Case to the District Court for the Northern District of Texas (and Exhibits thereto); and

- Proposed Orders

were served upon the following counsel of record at the address(es) indicated, by electronic mail and first class mail, postage prepaid, on this 6th day of May 2008:

David A. Super, Esq.
Baker Botts LLP
The Warner
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400
(202) 639-7768

*Counsel for Respondent/Defendant*

Brian T. Morris, Esq.
Winstead PC
1201 Elm Street, Suite 5400
Dallas, Texas 75270
(212) 745-5400

*Counsel for Nominal Petitioner/Nominal Plaintiff*


                              /s/   Michael A. Johnson
                              Michael A. Johnson, D.C. Bar No. 460879